**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

**CASE NO.: 1:26-cv-04991**

RODNEY SMITH LTD.,

                    Plaintiff,

v.

MASCO CORPORATION and DELTA
FAUCET COMPANY,

                    Defendants.

## COMPLAINT FOR COPYRIGHT INFRINGEMENT
### (INJUNCTIVE RELIEF DEMANDED)

Plaintiff RODNEY SMITH LTD. by and through its undersigned counsel, brings this

Complaint against Defendants MASCO CORPORATION and DELTA FAUCET COMPANY

for damages and injunctive relief, and in support thereof states as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff RODNEY SMITH LTD. ("RSL") brings this action for violations of its

exclusive rights under the Copyright Act, 17 U.S.C. §106, to copy and distribute unauthorized

versions of several iconic photographs by renowned art photographer Rodney Smith.

## JURISDICTION AND VENUE

2.      This is an action arising under the Copyright Act, 17 U.S.C. § 501.

3.      This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C.

§§ 1331, 1338(a).

4.      Defendants are subject to personal jurisdiction in New York because Defendants

regularly conduct business in New York.

**SRIPLAW**
CALIFORNIA ♦ FLORIDA ♦ GEORGIA ♦ INDIANA ♦ NEW YORK ♦ TENNESSEE

5.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 1400(a) because the events giving rise to the claims occurred in this district, Defendants engaged in infringement in this district, and Defendants are subject to personal jurisdiction in this district.

## PARTIES

6.    RSL is a New York corporation with a principal place of business located at 7 Lawrence Lane, Palisades, NY 10964.

7.    Masco Corporation ("Masco") is a Michigan Corporation, with its principal place of business at 17450 College Parkway, Livonia, MI, 48170. Masco is a global manufacturer of home improvement and building products and owns well-known brands such as Delta Faucet, Behr Paint, and Hansgrobe. As part of its portfolio, Masco includes Delta Faucet Company which operates the luxury brand Newport Brass, helping Masco serve the high-end segment of the plumbing fixtures market.

8.    Delta Faucet Company ("Delta")is an Indiana Corporation, with its principal place of business at 55 East 111th Street, Indianapolis, Indiana 46280.

9.    Newport Brass is a brand. The Newport Brass brand was previously owned by Brasstech, Inc., another subsidiary of Masco, but in early 2025, Masco folded Brasstech and the Newport Brass brand into the Delta Faucet division of Masco. It is unclear at this time whether Delta or Masco or some other Masco subsidiary operates, distributes, markets and promotes the Newport Brass brand and engaged in the acts alleged herein. Therefore, references to Newport Brass in this Complaint refer generally to the activities of Masco and Delta.

## PLAINTIFF RSL

10.    Rodney Smith (1947-2016) was a prominent photographer whose whimsical work invited comparison to that of surrealist painter Rene Magritte. Long acclaimed for his iconic black and white images that combine portraiture and landscape, Smith created enchanted worlds

2

full of subtle contradictions and surprises.  Using only film and light, his un-retouched, dream-like images are matched in quality by the craft and physical beauty of his prints. His work is included in the permanent collections of the J. Paul Getty Museum (Los Angeles, CA); Houston Museum of Fine  Arts (Houston, TX); Museum of Fine Arts (Boston, MA); Philadelphia Museum of Art (Philadelphia, PA); Bayley Museum, University of Virginia (Charlottesville, VA); Museum of Art, Brigham Young University (Salt Lake City, UT); Rose Art Museum, Brandeis University (Waltham, MA); National September 11th Memorial & Museum (New York, NY); Yale University Art Gallery (New Haven, CT); and the Portland Museum of Art (Portland, ME).

11.    RSL and the Estate of Rodney Smith are different names for the same thing. "RSL", also known as the "Estate of Rodney Smith", is managed by Mr. Smith's wife, Leslie Smolan. RSL preserves Mr. Smith's artistic legacy and administers all rights, including copyrights, in his photographic works.

**PLAINTIFF'S COPYRIGHT RIGHTS**

12.    Throughout his career, Rodney Smith developed, refined, and repeated a number of different tableau visualized in his photographs. A photographer's tableau is the deliberately staged scene that a photographer constructs *before* pressing the shutter — the intentional arrangement of subjects, props, costumes, positioning, and setting that the photographer designs and controls as an act of creative authorship.[1] It is distinguished from simply pointing a camera at a pre-existing object or landscape. When a photographer poses a subject in a particular costume, places that subject in a specific spatial relationship to props and background, chooses

---

[1] When a photographer constructs a tableau, they are performing every task that a professional art director performs on a commercial shoot. The only difference is that in fine art photography the photographer and the art director are the same person.

**SRIPLAW**
CALIFORNIA ♦ FLORIDA ♦ GEORGIA ♦ INDIANA ♦ NEW YORK ♦ TENNESSEE

the geometry of the arrangement, and directs the mood and posture of the figures, every one of those pre-shutter decisions is an original creative act that belongs to the photographer. See, *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 450 (S.D.N.Y. 2005) ("[I]f a photographer arranges or otherwise creates the subject that his camera captures, he may have the right to prevent others from producing works that depict that subject.")

13.    Courts have long recognized that the more pre-shutter creative control a photographer exercises, the broader and stronger the copyright protection. In *Burrow-Giles Lithographic Co. v. Sarony,* the Supreme Court's seminal case protecting the photographer's art, the Court specifically protected the photographer's choices in "posing the said Oscar Wilde in front of the camera, selecting and arranging the costume, draperies, and other various accessories." 111 U.S. 53, 55 (1884). *Rogers v. Koons* confirmed that "posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved" are all protectible elements of photographic expression. 960 F.2d 301, 307 (2d Cir. 1992)

14.    This case is about one of the very recognizable copyrighted tableau Rodney Smith created in his career. It can be characterized by at least six different staged compositional elements:

> a.  Formally attired figures in incongruous settings — subjects dressed in black suits, bowler hats, white dress shirts, or formal gowns placed in rural, pastoral, or otherwise incongruous outdoor environments where such dress has no natural context;

**SRIPLAW**
CALIFORNIA ♦ FLORIDA ♦ GEORGIA ♦ INDIANA ♦ NEW YORK ♦ TENNESSEE

b.  Surrealist spatial geometry — figures arranged in precise geometric relationships to one another and to the horizon line, often symmetrically balanced or deliberately off-center in ways that create visual tension;

c.  Absurdist props and actions — subjects engaged in physically impossible, dreamlike, or theatrically absurd activities (balancing on ladders, reading newspapers mid-flight, standing in open fields in formal attire) that have no naturalistic explanation;

d.  High-contrast black-and-white tonal palette — a luminous, heavily processed tonal range that reads as timeless and cinematic rather than documentary;

e.  Horizon-centered compositional framing — a consistently low or mid-horizon placement that emphasizes sky, negative space, and the isolation of figures within an oversized landscape; and

f.  Stillness and theatricality — figures frozen in choreographed poses that feel simultaneously spontaneous and meticulously rehearsed.

15.   In the late 1990s, Rodney Smith created and applied this tableau in four photographs in his signature black and white aesthetic, which are shown below and referred to herein as the "Works." Each of the Works features elements of the Rodney Smith tableau described above.

"Gary with Cane, Parc de Sceaux, France, 1995"



"Tim on carpet serving tea, Long Island, New York, 1997"



"Landscape no. I, Parc de Sceaux, France, 1995"



"Untitled"



**SRIPLAW**

CALIFORNIA ♦ FLORIDA ♦ GEORGIA ♦ INDIANA ♦ NEW YORK ♦ TENNESSEE

16.    RSL registered the Works with the Register of Copyrights as part of the Group

Registrations as shown in the table below. The Certificate of Registrations are attached hereto as

**Exhibit 1**.

| Image Title | Image Deposit Title | Registration Number | Registration Date |
|---|---|---|---|
| "Gary with Cane, Parc de Sceaux, France, 1995" | TRU2310231.jpg | VA 2-239-163 | 02/03/2021 |
| "Tim on carpet serving tea, Long Island, New York, 1997" | TRU2257647.jpg | VA 2-238-553 | 02/03/2021 |
| "Landscape no. I, Parc de Sceaux, France, 1995" | TRU2267541.jpg | VA 2-239-163 | 02/03/2021 |
| "Untitled" | TRU2257753.jpg | VA 2-239-163 | 02/03/2021 |

17.    At all relevant times RSL was the owner of the copyrighted Works.

**INFRINGEMENT BY DEFENDANTS**

18.    Newport Brass occupies the uppermost tier of the residential kitchen and bath

fixtures market. Founded in Newport Beach, California in 1989, Newport Brass manufactures

and distributes solid brass faucets, shower systems, tub fillers, and bath accessories that are

hand-finished on-site in Southern California and sold at luxury price points — fixtures that

Newport Brass promotes as functioning as permanent, heirloom-quality design objects rather

than replaceable commodity hardware. The brand's own language describes its products as

"legacy refined for modern living" and its design philosophy as one of "restraint,"

"intentionality," and "timelessness," explicitly rejecting trend-driven aesthetics in favor of

enduring form. Its principal design manager has described the brand's aspiration as "a very long

love affair" between the consumer and the fixture — an object that gets more beautiful with age,

much like unlacquered brass that develops a living patina.

**SRIPLAW**

CALIFORNIA ♦ FLORIDA ♦ GEORGIA ♦ INDIANA ♦ NEW YORK ♦ TENNESSEE

19.     In early 2025, Delta Faucet Company acquired Newport Brass specifically to gain entry into the luxury segment of the kitchen and bath market, positioning it alongside its upper-premium brand Brizo but above it in exclusivity and craft. Delta Faucet's president described the acquisition as positioning the company to "capture growth in the luxury and upper premium segments," with Newport Brass serving the design community, trade professionals, and high-net-worth end consumers who demand custom finishes, solid construction, and provenance. The brand's relaunch in 2025 was conducted not through mass media but through intimate gatherings of interior designers and industry press — a deliberate signal that Newport Brass markets to a curated professional and affluent consumer audience.

20.     At all times relevant herein, Defendants owned and operated the Website at the URL https://www.newportbrass.com/ (the "Website").

21.     In or about September of 2025, Defendants posted a fifty-seven (57) second black and white video (the "Infringing Video") on the homepage of the Website. The Infringing Video plays behind the words "LEGACY REFINED FOR MODERN LIVING." The Infringing Video contains slavish re-creations of the Plaintiff's Works animated into moving figures. The Infringing Video contains five scenes featuring what appear to be animated models accompanied by Newport Brass bathroom or kitchen plumbing fixtures. The models move in slow motion to maximize the view of the bathroom fixtures.

22.     In two of five scenes in the Infringing Video, the animated models display the bathroom fixtures on either a metal tray or in a wicker basket. These two scenes of the Infringing Video reproduce all the features of Rodney Smith's tableau described above.

**SRIPLAW**
CALIFORNIA ♦ FLORIDA ♦ GEORGIA ♦ INDIANA ♦ NEW YORK ♦ TENNESSEE

23.     A side-by-side comparison of the Works against still captures from the two scenes of the Infringing Video are shown below.



| Plaintiff's Works | Defendants' Video |
|---|---|

24.     The Defendants created stills by copying Rodney Smith's tableau. The stills (the "Infringing Images") were used in print advertising in Architectural Digest magazine, in physical brochures for Newport Brass products, and on different pages of the Website. For example, one of the Infringing Images on the cover of the Newport Brass 2026 Price Book is shown below:

9



25.     Defendants also provided the Infringing Images to third parties for use in a press release about the re-branding of Newport Brass. For example, the below was posted on Luxury Newport International's website, https://www.luxuryportfolio.com/trends/design/sophisticated-modernity-defines-newport-brass-rebrand:



Image courtesy of Newport Brass

Newport Brass, the California-based maker of solid brass fixtures, has unveiled a brand relaunch that honors its artisanal heritage while embracing a contemporary approach to luxury living.

Founded in 1989, the company has built its reputation on craftsmanship, quality materials and elegant design. Each piece, made from solid brass and hand-finished by skilled artisans, reflects the company's belief that everyday objects should be as enduring as they are beautiful.

**SRIPLAW**

CALIFORNIA ♦ FLORIDA ♦ GEORGIA ♦ INDIANA ♦ NEW YORK ♦ TENNESSEE



26.     Furthermore, full page advertisements were placed by Defendants in the October

2025[2] and January 2026[3] issues of Architectural Digest featuring the Infringing Images.

27.     At no time did RSL grant Defendants or anyone else the authority to reproduce

the Works to promote their business.

28.     To this date, Defendants continue to use the Infringing Video and Infringing

Images containing the Works without RSL's permission or authority.

29.     The Infringing Video and Infringing Images used by Newport Brass in its

marketing campaign materials described above and in others to be discovered that are also part

of that same campaign (hereinafter "Composite") are not original works of authorship. The

Composite is a composite image that was generated, on information and belief, through the use

of an artificial intelligence image-generation application (hereinafter the "AI Application").

Plaintiff makes this allegation after performing extensive research on the Infringing Video and

Infringing Images. The AI Application was likely trained on a large language model including a

---

[2] The infringement can be seen on page forty-seven of the October 2025 issue. *See* https://archive.architecturaldigest.com/issue/20251001/print.
[3] The infringement can be seen on page eighty-five of the January 2026 issue. *See* https://archive.architecturaldigest.com/issue/20260101/print.

**SRIPLAW**
CALIFORNIA ♦ FLORIDA ♦ GEORGIA ♦ INDIANA ♦ NEW YORK ♦ TENNESSEE

corpus of images that included many of Rodney Smith's photographs and that included the Works.

30.    The Composite is a derivative work, as that term is defined under 17 U.S.C. § 101, of one or more of the Works owned by plaintiff. The Composite replicates, recombines, and reproduces the protectible creative expression embodied in the Works, including without limitation the distinctive staged tableau, compositional architecture, tonal palette, figure-to-setting relationships, and surrealist visual vocabulary that constitute the original authorship of Rodney Smith and that are protected by the registered copyrights identified herein.

31.    The preparation of the Composite without authorization from plaintiff constitutes infringement of Plaintiff's exclusive rights in its works,

32.    The Composite was created by causing the AI Application to generate an image through a command, prompt, or instruction directing the AI Application to produce an image in the style of the works of Rodney Smith and/or similar in style to the Works at issue, or words to similar effect. Such a command necessarily caused the AI Application to draw upon, reproduce, and recombine the protectible expression embodied in the Works in order to fulfill the instruction. The resulting Composite is, therefore, not an independently created work, but rather is an unauthorized copy of the Works including the original authorship of Rodney Smith.

33.    Newport Brass knew or reasonably should have known, at the time it caused or directed the creation of the Composite, that the use of an AI Application to generate imagery in the style of a named or identifiable photographer's copyrighted works constitutes the unauthorized reproduction and preparation of a derivative work in violation of 17 U.S.C. §§ 106(1) and 106(2). Newport Brass's conduct was willful within the meaning of 17 U.S.C. § 504(c)(2).

34.     Plaintiff is presently investigating the identity of the entity or entities that own, operate, license, or control the AI Application used to generate the Composite. Upon ascertaining the identity of such entity or entities, Plaintiff intends to seek leave to amend this Complaint to add such entity or entities as defendants.

35.     Plaintiff alleges, on information and belief, that the AI Application was trained, in whole or in part, on one or more of the Works without the authorization or license of Plaintiff, and that such training constituted an unauthorized reproduction of the Works in violation of 17 U.S.C. § 106(1), and therefore the entity or entities that own or control the AI Application are liable to Plaintiff for direct copyright infringement. The incorporation of the Works into the AI Application's training dataset enabled the AI Application to accept and fulfill commands to generate imagery in the style of Plaintiff's copyrighted photographs, thereby providing the direct technical means by which the infringing Composite was created.

36.     The entity or entities that own or control the AI Application are liable to Plaintiff for vicarious copyright infringement in that they (a) had the right and ability to supervise and control the infringing activity of users who directed the AI Application to generate imagery in the style of Plaintiff's copyrighted works, and (b) derived a direct financial benefit from such activity, including without limitation through subscription fees, licensing revenues, and the commercial value derived from offering a product capable of generating style-derivative images on command.

37.     The entity or entities that own or control the AI Application are further liable for contributory copyright infringement in that they had actual or constructive knowledge that the AI Application was being used to generate imagery that infringes the copyrights of photographers including Plaintiff, and they materially contributed to such infringement by designing,

13

**SRIPLAW**

CALIFORNIA ♦ FLORIDA ♦ GEORGIA ♦ INDIANA ♦ NEW YORK ♦ TENNESSEE

maintaining, and making available an application capable of accepting and fulfilling commands to generate images in the style of identified copyrighted works.

## COUNT I
## COPYRIGHT INFRINGEMENT AGAINST MASCO AND DELTA

38.     RSL incorporates the allegations of paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39.     RSL is the sole and exclusive owner of all rights in and to the Works.

40.     RSL registered the Works with the Register of Copyrights pursuant to 17 U.S.C. § 411(a).

41.     Defendants copied, displayed, and distributed the Works and made derivatives of the Works without RSL's authorization in violation of 17 U.S.C. § 501.

42.     Defendants performed the acts alleged in the course and scope of their business activities.

43.     Defendants' acts were willful, intentional and malicious.

44.     Defendants copied the Works, created derivative works, displayed the works and distributed the works in the Infringing Video, Infringing Images, and the Composite.

45.     In slavishly copying the Works in the Infringing Video, Infringing Images, and the Composite, defendants willfully violated RSL's registered copyrights in and to the Works and have misappropriated the plaintiff's valuable goodwill to promote their high-end plumbing fixtures.

46.     Defendants' willful acts of infringement are ongoing.

47.     RSL has been damaged.

48.     The harm caused to RSL has been irreparable.

## COUNT II – REMOVAL OR FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION

49.     Plaintiff incorporates the allegations of paragraphs 1 through 37 of this Complaint as if fully set forth herein.

50.     Plaintiff's Copyrighted Works contained copyright management information (CMI) as defined by 17 U.S.C. § 1202 including the name Rodney Smith Ltd., as shown below.



51.     Defendants knowingly and with the intent to enable or facilitate copyright infringement, removed CMI from the works at issue in this action in violation of 17 U.S.C. § 1202(b).

52.     Alternatively, Defendants knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided copyright management information that is false, their own name Newport Brass.

53.     Defendants committed these acts knowing or having reasonable grounds to know that they will induce, enable, facilitate, or conceal infringement of Plaintiff's rights in the works at issue in this action protected under the Copyright Act.

54.     Defendants caused, directed and authorized others to commit these acts knowing or having reasonable grounds to know that they will induce, enable, facilitate or conceal infringement of Plaintiff's rights in the works at issue in this action protected under the Copyright Act.

55.     Plaintiff has been damaged.

56.     The harm caused to Plaintiff has been irreparable.

**SRIPLAW**
CALIFORNIA ♦ FLORIDA ♦ GEORGIA ♦ INDIANA ♦ NEW YORK ♦ TENNESSEE

WHEREFORE, Plaintiff RODNEY SMITH LTD. prays for judgment against Defendants MASCO CORPORATION and DELTA FAUCET COMPANY that:

a.    Defendants and their officers, agents, servants, employees, affiliated entities, and all of those in active concert with them, be preliminarily and permanently enjoined from committing the acts alleged herein in violation of 17 U.S.C. § 501;

b.    Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' copyright infringement, or statutory damages (at Plaintiff's election), for all infringements involved in the action, with respect to any one work, for which any one Defendant is liable individually, or for which Defendants are liable jointly and severally with another, in a sum of not less than $750 or more than $30,000 as the Court considers just pursuant to 17 U.S.C. §504(c)(1), or to the extent the Court finds that infringement was committed willfully, an award of statutory damages to a sum of not more than $150,000 per violation, pursuant to 17 U.S.C. §504(c)(2);

c.    Entry of an Order requiring Defendants to pay Plaintiff for all profits and damages resulting from Defendant's violations of 17 U.S.C. § 1202 or statutory damages (at Plaintiff's election) per violation, for which Defendants shall be liable in a sum per violation of not less than $2,500 or more than $25,000 per violation pursuant to 17 U.S.C. §1203;

d.    RSL be awarded its attorneys' fees and costs of suit under the applicable statutes sued upon;

e.    RSL be awarded pre- and post-judgment interest; and

**SRIPLAW**

CALIFORNIA ♦ FLORIDA ♦ GEORGIA ♦ INDIANA ♦ NEW YORK ♦ TENNESSEE

        f.      RSL be awarded such other and further relief as the Court deems just and proper.

**JURY DEMAND**

RSL hereby demands a trial by jury of all issues so triable.

Dated: June 12, 2026                Respectfully submitted,

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN (JR 0352)
New York Bar Number: 2459576
joel.rothman@sriplaw.com
RACHEL I. KAMINETZKY
New York Bar Number: 6030647
rachel.kaminetzky@sriplaw.com

**SRIPLAW, P. A.**
41 Madison Avenue
25th Floor
New York, New York 10010
656.475.9070 – Telephone
561.404.4353 – Facsimile

and

JAMES E. HORNSTEIN (*pro hac pending*)
California Bar No. 066236
jimh@jimhlaw.com

**Law Offices of James Hornestin**
3154 Brookdale Rd
Studio City, CA 91604
310.322.7487 – Telephone
323.656.2356 – Facsimile

*Counsel for Plaintiff Rodney Smith Ltd.*